DAMOORGIAN, J.
Leighlan Fraser appeals his judgment and sentence for one count of criminal mischief and one count' of attempted burglary of a dwelling following pleas of no contest to both charges. We reverse because the trial court fundamentally érred during the sentencing phase by refusing, as a matter of policy, to consider Fraser’s mental health as a possible basis for downward departure.
Fraser was placed on probation after pleading no contest to one count of criminal mischief. The day after the court entered its- probation order, Fraser was arrested and charged with a new law violation for burglary. As a result of his arrest, Fraser was also charged with violating his probation. Fraser pled no contest in each ■ case in exchange for a reduction of the burglary charge- to attempted burglary. The State also *848 agreed to a cap of three years in prison and represented that Fraser could make an argument to the court for a downward departure sentence. The court accepted Fraser’s pleas and adjudicated him guilty on each charge. At his sentencing hearing, Fraser presented expert testimony from a forensic psychologist who explained that Fraser suffered from several mental health issues. The psychologist also testified that Fraser needed specialized individual counseling, which was not widely available in prison. He opined that Fraser’s case should be transferred to mental health court to ensure that he received the treatment and monitoring he needed. Fraser’s mother and a family friend gave testimony consistent with that of the expert’s.
Although Fraser scored 16.05 months in prison, defense counsél argued for a downward departure sentence of one year in the county jail followed by probation with the condition that Fraser attend and graduate mental health court. The State argued for the three year agreed upon cap followed by probation. At the conclusion of the arguments, the court expressed its views on a defendant’s mental health issues as a sentencing consideration, concluding that it did not believe mental health was a proper sentencing consideration. It explained:
[TJhis is something where legal scholars may debate the merits of the different positions, but I’m of the belief that Chestnut v. State, a Florida Supreme Court case from 1989 explained that it could be said that many,' well if not most, crimes are committed by people with mental aberrations. If such mental deficiencies are sufficient to meet the definition of insanity this person should be acquitted on that ground and treated for the disease. Persons with less serious mental deficiencies should be held accountable for their crimes just as everyone else. And I’ve cited Professor Stephen K. Erickson. He’s got his law degree, Masters of Law, Ph.D. in psychology. He was the mental illness research education and clinical center fellow at Yale University Department of Psychiatry writing on the intersection of law and psychiatry, and he wrote ‘for the law an individual capacity for responsibility is presumed and the bar for exculpation is set high as the opposite result would surely cause our entire criminal justice system to collapse under the weight of an endless procedure morass of dueling experts and frivolous affirmative defenses. Indeed, efficiency is both a necessary and legitimate aim for criminal law. American criminal law has always set the bar high for diminished capacity and exculpatory defenses, not because it is ignorant of the individual differences people have, but because it demands equal compliance of the law from everyone irrespective of those differences. Only under that regimen can we have a comprehensible and effective criminal code that assures the biologically gifted and the biologically deficient that all citizens they encounter are expected not to murder, rape and otherwise engage unlawful conduct against them.’
He also published, in the Minnesota Law, Journal of Law Science and Technology in 2010, ‘that agency is derived from its near universal belief that people can be persuaded in some fashion to abide by its dictates or suffer punishment for failing to do so. While scholars may debate the essence of justice and mercy (indiscernible) legal concepts of these elements derived in large measure from the idea that people choose and intend their behavior most of the time. To undo agency risks undoing the very heart of how law operates in the connec *849 tion between law and the people it governs.’
So if I’m in the park with my kids and a guy comes to me and sticks a gun in my face and steals my property and terrorizes my kids, I don’t care about his issues. I just wanna be safe, and that’s the fundamental principle of having a criminal justice system is to make sure that people are safe and secure. That’s why we have government. And treatment is great. Our mental health system needs reform, but, I think at some point we’re gonna recognize that the criminal justice system has a legitimate function separate and apart from treatment and therapy and psychology. Otherwise, we’re all at risk.
The court sentenced Fraser to three years in prison followed by two years of probation. This appeal follows.
Fraser argues that the court committed fundamental error when it expressed a policy of refusing to consider mental health evidence as a possible mitigating factor in favor of a request for a downward departure sentence. The State counters that Fraser’s failure to withdraw his plea is a jurisdictional bar to his appeal. Alternatively, the State argues that the trial judge clearly considered Fraser’s mental health status in its sentencing decision, because the trial court recommended that Fraser be “housed for maximum opportunity for counseling and treatment.”
Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii) provides that:
A defendant who pleads guilty or nolo contendere may otherwise directly appeal only:
a. the lower tribunal’s lack of subject matter jurisdiction;
b. a violation of the plea agreement, if preserved by a motion to withdraw plea;
c. an involuntary plea, if preserved by a motion to withdraw plea;
d. séntencing error, if preserved; or
e. as otherwise provided by law.”
Fla. R. App. P. 9.140(b)(2)(A)(ii).
First, we reject the State’s jurisdictional argument because Fraser is not arguing that his plea agreement was violated or that his plea was involuntary. Rather, Fraser takes issue with the trial court’s sentencing process. In Cromartie v. State, the Florida Supreme Court established that fundamental error occurs when a trial court refuses to consider a legislatively authorized sentencing option as a matter of policy. 70 So.3d 559, 564 (Fla.2011) (trial court’s stated policy of rounding up sentences was fundamental error because it improperly extended incarceration in an arbitrary manner thus violating the defendant’s due process rights). Therefore, despite the lack of a motion to withdraw plea, we have jurisdiction to consider this appeal under Rule 9.140(b)(2)(A)(ii)(e).
Turning to the main issue in this case, the trial court’s commentary during the sentencing hearing reflects that the court was deeply concerned, irrespective of Fraser’s individual situation, by the general concept that mental health could be considered a basis for a departure sentence. The court expressed its personal view that almost every person who commits a crime has some sort of mental aberration, and professed its fear that allowing persons to have unequal footing at sentencing based on mental health considerations puts the functioning of the justice system at risk. Although the downward departure statute expressly provides that the fact a “defendant requires specialized treatment for a mental disorder” is a mitigating circumstance for which a downward departure may be justified, the trial judge *850 implied that he would not, as a general policy, consider a defendant’s mental health needs as a basis for downward departure. § 921.0026(2)(d), Fla. Stat. (2014). This was error. Little v. State, 152 So.3d 770, 772 (Fla. 5th DCA 2014) (trial court’s policy of refusing to consider a downward departure sentence in cases where the defendant was convicted by a jury constituted fundamental error); Barnhill v. State, 140 So.3d 1055, 1061 (Fla. 2d DCA 2014) (trial court’s dissertation suggesting that it would never consider a downward departure in child pornography cases violated due process); Pressley v. State, 73 So.3d 834, 837 (Fla. 1st DCA 2011) (trial court committed fundamental error by, as a matter of policy, refusing to consider boot-camp as a youthful offender sentencing option because “judicial application of a policy against consideration of a lawful sentence is a violation of a defendant’s due process”).
The State’s reliance on the fact that the court provided that “defendant be housed for maximum opportunity for counseling and treatment” in its sentencing order does not alter the implications of the court’s statements. The pertinent issue is not whether the court failed to take Fraser’s mental health into account at all, but whether it refused to consider his mental health needs as a basis for downward departure as a matter of policy.
Accordingly, we reverse the sentence and remand for resentencing before a different judge. In doing so, we do not express an opinion whether a departure sentence is appropriate in this case.

Reversed and remanded.

GROSS and TAYLOR, JJ., concur.