IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LEVAR JERMAINE TABORN
TYSON,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-4707

_____/

Opinion filed October 5, 2017.

An appeal from the Circuit Court for Duval County.
Tatiana Salvador, Judge.

Andy Thomas, Public Defender, and Megan Long, Assistant Public Defender, for
Appellant.

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Assistant Attorney
General, for Appellee.

WINSOR, J.

      Before Levar Tyson pulled a gun in a strip-club parking lot, he already had at

least four felony convictions, including at least one for possession of a firearm by a

felon. Tyson had already served part of a seven-year sentence in New Jersey for,

among other things, weapon possession. So after the strip-club incident led to a new

felon-in-possession conviction, it should have been no surprise that the sentencing court considered Tyson's track record. The court gave Tyson ten years—below the fifteen-year maximum, but more than the seven years Tyson requested.

On appeal, Tyson does not challenge his conviction, and he does not contest the fact that his sentence fell within the permissible statutory range. His sole argument is that the trial court violated due process by announcing a rule that it would not "go backwards" by imposing a lighter sentence than Tyson earned for his earlier convictions. We review for fundamental error. *See Cromartie v. State*, 70 So. 3d 559, 563 (Fla. 2011).[1]

## I.

At the sentencing hearing, Tyson apologized for his conduct and for the burden it put on Florida's taxpayers. He acknowledged his past convictions, and he explained that he hoped to become a productive member of society. He asked the court for leniency. Through a letter submitted to the court, Tyson's stepmother also sought mercy, explaining that although Tyson's criminal record was "extreme," he

---

[1] Tyson argues he preserved this issue by filing a rule 3.800(b) motion below. But *Cromartie* foreclosed this argument, making clear our review is only for fundamental error. *See* 70 So. 3d at 563.

2

was making efforts to change for the better. Tyson's lawyer requested a seven-year sentence.

The State sought ten years. The prosecutor recounted the facts of the crime, explained Tyson's prior record, and argued that Tyson was a danger to society. The prosecutor also argued that Tyson's earlier punishments had been ineffective: "[I]t's clear by his previous record and continued activity that he has not been deterred by the justice system and by the sentences that he has received in his previous cases from New Jersey. . . . He continues to commit crimes."

Before pronouncing Tyson's sentence, the court indicated it would consider the evidence presented at trial, Tyson's statements at sentencing, the stepmother's letter, Tyson's prior record, and all arguments of counsel. It also offered this commentary:

> And as you all know, obviously, when it comes to folks who have a prior history that come before me, I do look to see not only what the prior offenses are, but what was the prior sentence. Because one thing I am not going to do, is go backwards. That just doesn't make any sense. Because obviously if they've been convicted, and given two years and they still are committing crimes and then they're convicted and given four years and they're still committing crimes and then they're convicted or come before—we're going to just keep going up until perhaps some amount of time will make a difference and will send the proper message to the defendant.

The court then imposed the ten-year sentence we now review.

## II.

In *Cromartie v. State*, the supreme court held that a trial judge's stated policy to always "round up" sentences to the next whole year violated due process because it "improperly extended" the defendant's sentence in "an arbitrary manner." 70 So. 3d at 564. Relying almost exclusively on *Cromartie*, Tyson argues that the trial court's announced I'm-not-going-to-go-backwards policy likewise violated due process. We cannot accept this argument.

Unlike the *Cromartie* sentence, there was nothing arbitrary about Tyson's ten-year sentence. In *Cromartie*, the trial judge had sentenced the defendant to eight years, after "rounding up" from the 7.8 year minimum. *Id.* at 560. After the discovery of a scoresheet error led to resentencing, the court again "rounded up"—but this time from 6.16 years (the revised scoresheet minimum) to seven. When pressed about the increased effect of the rounding, the judge said, "I round off in years. What can I tell you? That's just my way." *Id.* She then shared her view that it "really doesn't make a difference. . . . I'm telling you in the real world whether you give somebody nine years or ten years doesn't much matter, you know. It just doesn't. And to have— that's an argument over minutia." *Id.* In other words, the trial judge rounded up for

4

no reason at all, other than her view that it made no difference and was just "her way." This, the Florida Supreme Court held, was arbitrary and violated due process.[2]

Tyson's sentence, on the other hand, came after the trial court's consideration of Tyson's particular case. The court evaluated the whole record—Tyson's statement, the facts of his crime, and his substantial criminal history. The sentence that followed was not the product of some arbitrary rule; it was not ordered "without any reflection on the individual merits of this particular defendant's case," *Pressley v. State*, 73 So. 3d 834, 838 (Fla. 1st DCA 2011). On the contrary, it was the product of the court's studied consideration. *Cf. McKinney v. State*, 27 So. 3d 160, 162 (Fla. 1st DCA 2010) (criticizing trial court's commentary on utility of youthful offender program but concluding "we are satisfied that the court's [sentencing] decision . . . was properly based upon a consideration of Appellant's circumstances and the serious nature of his crimes, rather than the court's opinion of the youthful offender program").

---

[2] This court, too, found merit in the argument that the "policy of mechanically rounding up a prison sentence to the nearest whole number . . . without any reflection on the individual merits of a particular defendant's case is arbitrary." *Cromartie v. State*, 16 So. 3d 882, 883 (Fla. 1st DCA 2009), quashed by 70 So. 3d 559 (Fla. 2011). We held, though, that the issue was unpreserved. *Id.*

Moreover, to the extent the trial court imposed a strict I'm-not-going-to-go-backwards policy, we are certain it made no difference. In *Cromartie*, the supreme court concluded that "the trial judge's stated policy 'improperly extended' Cromartie's incarceration." 70 So. 3d at 564. Absent that arbitrary policy, the *Cromartie* sentence would have been shorter.[3] Not so here. Indeed, Tyson himself asked for seven years, which apparently exceeds the time he did in New Jersey. He cannot ask for seven years below and argue here that it was error to not consider less. *Cf. Universal Ins. Co. of N. Am. v. Warfel*, 82 So. 3d 47, 65 (Fla. 2012) ("Fundamental error is waived under the invited error doctrine.").

The dissent convincingly explains the problems with rigid never-backwards policies: not all crimes are equal, people change, and so forth. But none of that helps us here, where the stated policy did not increase the sentence. Nothing in *Cromartie* requires resentencing whenever a judge announces a "policy" that might—in some other case—yield a due process violation. *Cromartie* would not require, for example, a new sentence if a judge announced he never gave probation but then detailed why

---

[3] Notably, the supreme court did not remand for consideration of a new sentence; it remanded with directions that Cromartie be sentenced "at the bottom of the guidelines." *Cromartie*, 70 So. 3d at 564. It obviously found the trial court would have imposed a minimum sentence but for its arbitrary rounding policy.

the particular circumstances of that particular case justified a decades-long prison sentence.

The trial court did not violate Tyson's due process rights.

AFFIRMED.

KELSEY, J., concurs; MAKAR, J., dissents with opinion.

MAKAR, J., dissenting.

A third rail in Florida's criminal sentencing process is touched when trial judges say they won't consider or summarily reject otherwise lawful sentencing options due to their individual sentencing practices, such as a policy of only rounding up sentencing recommendations to the next year or categorically excluding an available sentencing alternative. Cromartie v. State, 70 So. 3d 559, 564 (Fla. 2011) (trial judge's "policy of 'rounding up,'" and thereby improperly increasing defendant's length of incarceration, "violated [the defendant's] right to due process"); Pressley v. State, 73 So. 3d 834, 836 (Fla. 1st DCA 2011) ("[T]rial court's arbitrary policy not to consider 'boot camp,' which is a type of youthful offender sentence, without any reflection on the merits of [the defendant's] case constitutes a denial of due process and, thus, fundamental error."). This type of error is akin to where unlawful factors are considered as a result of trial judges' personal sentencing philosophies. See Fraser v. State, 201 So. 3d 847, 849-50 (Fla. 4th DCA 2016) (holding invalid a trial judge's general policy of refusing to consider mental disorder as a statutorily-permissible mitigating circumstance for which a downward departure was permissible).

On the theory that doing so is a denial of due process and fundamental error, our supreme court has required resentencing even when a trial court has sentenced a

8

defendant within a lawful range. Cromartie, 70 So. 3d at 564 ("[T]he sentence imposed was within the legal guidelines—it was above the minimum required by the scoresheet and below the statutory maximum, but the trial judge's stated policy 'improperly extended' [the defendant's] incarceration in an arbitrary manner."); see also Pressley, 73 So. 3d at 838 ("The sentence imposed [but reversed on appeal] was within the legal guidelines."). And our Court and others have reversed for resentencing where, although the trial court appears to have otherwise generally exercised appropriate discretion based on valid considerations, it also made a statement of its sentencing policy that conflicted with and thereby undermined observance of legitimate sentencing factors. See Pressley, 73 So. 3d at 838 ("[T]he trial court failed to explain in any manner why the trial court decided not to consider a youthful offender sentence. We find that the trial court made no comments that would convince us that the trial court properly exercised its discretion."); see also Fraser, 201 So. 3d at 850 ("The pertinent issue is not whether the court failed to take Fraser's mental health into account at all, but whether it refused to consider his mental health needs as a basis for downward departure as a matter of policy.").

At Tyson's sentencing, the trial judge considered a range of permissible factors in deciding what sentence was appropriate (Tyson's scoresheet set forth a minimum sentence of thirteen and a half months; the statutory maximum was fifteen

9

years). And the trial judge made the common sense point that a repeat offender with a prior history of offenses might require a stiffer punishment to both penalize the offender and protect society. But the judge's general sentencing policy was to increase the length of a defendant's sentence beyond what had been meted out against him in prior cases:

> Because one thing I am not going to do, is go backwards. That just doesn't make any sense. Because obviously if they've been convicted, and given two years and they still are committing crimes and then they're convicted and given four years and they're still committing crimes and then they're convicted or come before—we're going to just keep going up until perhaps some amount of time will make a difference and will send the proper message to the defendant.

Because Tyson had five prior felonies in New Jersey (four in 2007 and one in 2001), and most recently had been sentenced to seven years in prison (for the four 2007 felonies that included possession of a weapon), the trial judge's policy eliminated consideration of all lawful sentencing options less than or equal to seven years of imprisonment, which included the sentence Tyson sought. Pursuant to the judge's policy, Tyson was sentenced to ten years of incarceration for the one charge of firearm possession by a felon; the fact that Tyson's ten-year sentence is within a lawful range doesn't matter much, if at all. See, e.g., Cromartie, 70 So. 3d at 564.

The seemingly straight-forward application of Cromartie's fundamental error rule suggests no wiggle room in reversing this type of upward-ratcheting sentencing

10

policy, one that might make sense in its application in cases of intractable re-offenders; after all, an increased sentence is oftentimes the only effective option that serves societal goals of deterrence, retribution, and eliminating recidivism (putting aside rehabilitation) as to some hardened recidivists. Imposing an increased sentence in such cases wouldn't be arbitrary, it would be entirely rational. But the takeaway from Cromartie isn't just prohibiting judicial policies that lack an explanation (such as "rounding up" sentences); it also includes the elimination of across-the-board judicial policies that deny defendants the individualized sentencing process that Cromartie envisions is necessary to establish due process. See Fraser, 201 So. 3d at 849 ("[T]rial court's commentary during the sentencing hearing reflects that the court was deeply concerned, irrespective of Fraser's *individual* situation, by the general concept that mental health could be considered a basis for a departure sentence.") (emphasis added); Pressley, 73 So. 2d at 838 ("[T]he trial court's stated policy of not considering 'boot camp,' . . . without any reflection on the *individual* merits of this particular defendant's case is arbitrary and, consequently, a denial of due process.") (emphasis added). This is particularly true where the current offense is qualitatively or quantitatively different from the past offenses, thereby making an inflexible policy—increasing a current sentence above prior sentences—an ill-suited apples-to-oranges approach. A new but minor offense might warrant less

11

punishment than the sentence for a cluster of more severe crimes committed years ago.

A fly in the ointment is our decision in McKinney v. State, 27 So. 3d 160, 162 (Fla. 1st DCA 2010), which held that a trial judge's views about the "efficacy of the youthful offender program as a whole [had] no place in its sentencing decision," but that

> when those comments are viewed in context of trial court's complete explanation of its sentencing decision, we are satisfied that the court's decision not to sentence Appellant as a youthful offender was properly based upon a consideration of Appellant's circumstances and the serious nature of his crimes, rather than the court's opinion of the youthful offender program.

Id. The panel concluded the trial court didn't abuse his discretion despite his discounting the youthful offender program, but its decision predated Cromartie, which came out the next year.

Assuming that McKinney survives Cromartie, such that potentially prejudicial comments or policy statements made in the sentencing process can be deemed innocuous, what appears to have occurred in this close case falls more in line with Cromartie, which involved automatically increased sentences via the trial judge's rounding up policy. Similarly, a policy of increasing a sentence beyond prior ones—no matter the context—would exclude a range of lawful sentencing options and thereby be in conflict with Cromartie. The trial judge said she considered all

factors, such as Tyson's remorse, apology, and efforts to right himself, which is commendable, but her statement about not going "backwards" established that nothing less than a sentence greater than seven years would be considered, which violates <u>Cromartie</u>. Such a policy makes a difference. Not only will no defendant receive consideration of a sentence other than one greater than the longest already served, no defendant will ask for a lesser sentence than one already served, even if within a lawful range. Keep in mind that Tyson asked for the same sentence he'd just completed, which was perhaps all he realistically could hope for given the trial judge's stated policy; he wasn't required to ask for a lesser punishment, such as parole, to raise a <u>Cromartie</u> claim, whose focus is on the sentencing process not the sentencing result.

What results is a rule of law that says a trial judge must consider all lawful sentencing options and not apply an individual judicial policy that runs counter to the legislatively-crafted punishment code. Doing so does not eliminate the role of a trial judge's discretion at sentencing, which is broad and subject generally to deferential review. Individualized sentencing does not mean imposition of a lesser punishment; it can mean a stepped-up sentence to "send a message" to intractable offenders in individual cases. But given the fixedness of the fundamental error rule in <u>Cromartie</u>, a reversal and remand for resentencing is required here.

13