# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-3669

_____

BERNY SERRANO,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____


On appeal from the Circuit Court for Levy County.
Mark W. Moseley, Judge.

August 30, 2019


RAY, C.J.

   Berny Serrano appeals from an order resentencing him to life in prison for his crimes committed as a juvenile. We affirm.

## I.

   In 2005, Serrano, a seventeen-year-old high school student, and four of his friends decided to rob nineteen-year-old Jacob Langworthy while he was at home alone. After entering Langworthy's home, Serrano held Langworthy at gunpoint while the others ransacked the house looking for drugs and money. When a car pulled up outside, Serrano fatally shot Langworthy in the head and fled. For his part, Serrano was tried and convicted of first-degree murder, home invasion robbery, and conspiracy to commit home invasion robbery. He received a sentence of life

without parole for the murder, a concurrent term of life with a twenty-five-year mandatory minimum for the home invasion robbery, and a consecutive term of fifteen years in prison for the conspiracy. We affirmed his convictions and sentences in 2009. *Serrano v. State*, 15 So. 3d 629 (Fla. 1st DCA 2009).

In the years that followed, Serrano raised a series of postconviction challenges based on new developments in the law on juvenile sentencing. In 2012, following the United States Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010),[1] the circuit court reduced Serrano's life sentence for armed robbery to forty years in prison with a mandatory-minimum term of twenty-five years under the 10-20-Life statute. The same year, following the decision in *Miller v. Alabama*, 567 U.S. 460 (2012),[2] the court resentenced Serrano on the murder count to life in prison with the possibility of parole after twenty-five years.

In 2017, the court granted Serrano a new resentencing hearing on both the murder and robbery counts under chapter 2014-220, Laws of Florida, which amended Florida's juvenile sentencing statutes in the wake of *Graham* and *Miller*. At the

[1] *Graham v. Florida* held that the Eighth Amendment prohibits a sentence of life in prison without the possibility of parole for juveniles convicted of nonhomicide crimes. 560 U.S. 48, 74 (2010). The Supreme Court explained that while "[a] State is not required to guarantee eventual freedom" to these individuals, it must provide them "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75.

[2] *Miller v. Alabama* extended the reasoning of *Graham* and adopted a categorical-Eighth-Amendment ban on the imposition of a mandatory life sentence without the possibility of parole for juveniles convicted of homicide. 567 U.S. 460, 479 (2012). The Supreme Court did not foreclose a life-without-parole sentence in homicide cases but required the sentencer to first "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

resentencing hearing, the defense presented four witnesses: the retired prison warden, a forensic psychologist who evaluated Serrano, Serrano's wife, and Serrano himself. The defense introduced Serrano's artwork, his marriage certificate, pictures of Serrano with his wife and stepson, letters he wrote to his stepson, and certificates of achievement in Gospel Ministry and completion of Biohazard Training.

The State introduced documentation of Serrano's disciplinary reports in prison, records showing his time in confinement, and reports on gang-related activity. The State also presented letters from several friends and family members of the victim. The victim's mother, sister, grandmother, and a friend spoke before imposition of the sentence. The written and oral statements described the unrelenting pain the victim's loved ones have been experiencing since the victim's death and the incredible burden of having to relive the details of the victim's murder through the resentencing process. Many statements urged the court to impose the maximum sentence, not to reduce the life sentence, or to ensure that Serrano is never released.

Following the evidentiary hearing, the court analyzed the factors specified in section 921.1401, Florida Statutes (2014), and concluded that a life sentence remained appropriate for the murder conviction. The court resentenced Serrano to life in prison, with the right to judicial review after twenty-five years under section 921.1402(2)(a), Florida Statutes. The court also imposed concurrent sentences of fifteen years for conspiracy and forty years for armed robbery, with the right to judicial review after twenty years under section 921.1402(2)(d).

This is Serrano's appeal from the new sentencing order.

II.

We first consider Serrano's argument that his constitutional rights to a jury trial required the circuit court to empanel a jury for his resentencing. He contends that allowing a judge, rather than a jury, to determine whether a life sentence is appropriate under the statutory factors in section 921.1401 violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). As Serrano properly concedes in his reply brief,

3

this court rejected these arguments in *Copeland v. State*, 240 So. 3d 58, 59–60 (Fla. 1st DCA 2018), for the reasons expressed in *Beckman v. State*, 230 So. 3d 77, 94-97 (Fla. 3d DCA 2017). We therefore affirm on this issue without further discussion.

## III.

We next address Serrano's argument that the sentencing court violated his Eighth Amendment right against cruel and unusual punishment when it weighed the wishes of the victim's family and friends in deciding whether to sentence Serrano to life in prison.

By way of background, section 921.1401(2) of the juvenile sentencing statute directs the court to consider ten non-exhaustive factors "relevant to the offense and the defendant's youth and attendant circumstances" when determining whether life is an appropriate sentence for a juvenile homicide offender. One of the designated factors is "[t]he effect of the crime on the victim's family and the community." § 921.1401(2)(b), Fla. Stat.

During the evidentiary portion of the resentencing hearing, the court heard testimony and received letters from the victim's family and friends. Serrano acknowledges that the court properly considered the evidence about the emotional impact of the murder on the victim's loved ones. But he contends the court crossed the line by considering their pleas for Serrano to receive the harshest possible sentence. For support, he cites *Booth v. Maryland*, which held, in part, that the Eighth Amendment prohibits opinion testimony by a victim's family on the appropriate sentence in a capital sentencing proceeding.[3] 482 U.S. 496, 502–03 (1987).

To prevail on this issue, Serrano faces three obstacles. First, because there was no objection below, the claim must be

---

[3] Although the Supreme Court receded from portions of *Booth* in *Payne v. Tennessee*, 501 U.S. 808, 830 (1991), *Booth*'s prohibition on opinions from a victim's family members about the appropriate sentence in capital cases remains intact. *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016).

4

cognizable for the first time on appeal as fundamental error. Second, there must be some indication that the court considered the victim's family members' opinions on sentencing to determine the appropriate sentence. And finally, the Eighth Amendment must indeed prohibit courts from considering this type of victim-impact evidence in a juvenile sentencing proceeding. None of these conditions has been satisfied.

## A. *Booth* Errors are Not Fundamental

Serrano argues that the sentencing court's consideration of the opinions from the victim's family about the appropriate punishment is an Eighth Amendment violation under *Booth* that can be raised for the first time on appeal as fundamental error. Bound by Florida Supreme Court precedent, we disagree.

The supreme court has held that *Booth* errors are not fundamental in capital cases and procedurally barred if raised for the first time on appeal. *See, e.g.*, *Henry v. State*, 613 So. 2d 429, 431–32 (Fla. 1992) (holding that a claim of error under *Booth* was "not cognizable on appeal because [it did] not involve fundamental error and [was] not raised or objected to in the trial court"); *Brown v. State*, 596 So. 2d 1026, 1028 (Fla. 1992) (holding a *Booth* claim that the trial court "considered" the victim's daughter's recommendation that death was appropriate was procedurally barred because no timely objection was raised); *Carter v. State*, 576 So. 2d 1291, 1293 (Fla. 1989) (holding a "contemporaneous objection at trial is required before [the Florida Supreme Court] will entertain any issue based on *Booth*" and rejecting the claim "without reaching its merits").

We have not overlooked another line of supreme court cases that appears to cast doubt on the per se rule precluding fundamental-error-review of *Booth* errors. *See, e.g.*, *Jordan v. State*, 176 So. 3d 920, 934 (Fla. 2015) (holding there was no fundamental error because, in part, the victim's aunt "did not opine about . . . the appropriate sentence"). The cases that analyze the admission of victim-impact evidence for fundamental error draw from language in *Payne v. Tennessee*, 501 U.S. 808, 830 (1991), regarding a potential Fourteenth Amendment Due Process violation distinct from the Eighth Amendment one Serrano raises here. In *Payne*, the Supreme Court explained that

5

"[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." 501 U.S. at 825 (1991). The analysis in *Payne* provides a separate constitutional ground for relief when the Eighth Amendment does not prohibit the underlying evidence. *See, e.g.*, *Wheeler v. State*, 4 So. 3d 599, 606 (Fla. 2009) (recognizing "that evidence that places undue focus on victim impact, even if not objected to, can in some cases constitute a due process violation"); *Jordan*, 176 So. 3d at 934 (citing *Wheeler* and determining the defendant's due process rights were not violated as part of a fundamental error analysis).

This variant of case law is not directly applicable when, as here, a pure Eighth Amendment claim is raised. Because we are mindful that the supreme court does not overrule itself *sub silentio*, and we are bound to follow its holdings over contrary dicta, we hold that Serrano's Eighth Amendment challenge is procedurally barred.

B. Victim-Impact Evidence on Sentencing Not Considered

Even if Serrano's Eighth Amendment claim were properly preserved, there is no indication that the court sentenced Serrano based on the victim's family members' desires that he receive the harshest possible sentence.

While a court's consideration of constitutionally impermissible factors generally rises to the level of fundamental error, there must be some indication that the court based its sentence on an impermissible factor before this Court will reverse. *Barlow v. State*, 238 So. 3d 416, 417 (Fla. 1st DCA 2018) ("Nevertheless, there is no indication that the trial court based its sentence on [a potentially impermissible factor], so the exception provides no basis to reverse."). The mere fact that the court had evidence of a potentially improper factor before it is insufficient to merit reversal. *See id.* (collecting cases); *see also Scull v. State*, 533 So. 2d 1137, 1143 (Fla. 1988) (holding that a judge who "merely sees" a victim's family members' sentencing recommendation of death has committed no error absent consideration of the request when imposing sentence).

6

Here, there is no indication that the court considered the victim's family members' opinions on sentencing in determining Serrano's sentence. Instead, the record reflects that the court carefully balanced the rights of the victim's family and the rights of Serrano, so as not to impermissibly encroach on either.

After the close of the evidentiary portion of the resentencing hearing, the court took a moment to explain to the victim's loved ones why—twelve years after the murder—Serrano was entitled to another resentencing. The court explained,

> [a]nd the problem with the original sentence in this case was that the legislative scheme for sentencing, which judges are obligated to follow, included a mandatory provision which did not allow for the Court to weigh any of the factors that have been brought before this Court today, that those were not things to be considered. The State didn't bother to present evidence to the contrary because the Court had only one sentence it could give, and because of that, we are here today and now going through the process that I believe rightly should be part of our process.
>
> I rarely, in any situation, think that it is wise, whether it be legal or not, to have mandatory sentences. The reason for that being judges are in the best position, I believe, to bear, not only the responsibility, but also to be in a position to view all the things that should be considered in rendering a sentence of any importance whatsoever—and this is certainly important to everyone concerned—and, to the extent possible, to strive to be dispassionate, that is, to be objective. No one expects, really, either side to be objective completely.
>
> . . . .
>
> And it's understandable the feelings of the family in regard to their loss, why your input is significant and important. But you cannot be the decision makers in the end. Obviously, you cannot have objectivity, and no one would expect you to. But the court should weigh that,

7

and that's part of the weighing process of the Court; part of it, not entirely.

Serrano argues the court's remarks—that it should weigh the family's feelings and input—indicate that it took their opinions on sentencing into account when evaluating the appropriate sentence. We disagree. When read in context, the court was acknowledging that the *impact* of the murder on the victim's family is relevant, while expressly informing the family that the court is the final decisionmaker. Indeed, when the court turned to its analysis of the statutory sentencing factors, it analyzed the victim-impact factor as follows:

> The effect of the crime on the victim's family and on the community is again easy to comprehend, [t]hey have been devastated. They continue to be devastated. They were robbed of a son, of a friend, brother. All of society was robbed of his potential.

Based on our review, the court considered the testimony of the victim's family for its impact alone, which is no more than Serrano concedes that it can do.

## C. *Booth* Does Not Apply to Juvenile Resentencings Under *Miller*

Moreover, even if the court did consider the victim's family's wishes on sentencing, we are not persuaded that it would have been error. Serrano contends that *Booth*'s absolute prohibition on sentencing recommendations from the victim's family should apply equally in the context of a juvenile resentencing under *Miller*. We disagree and find *Booth* distinguishable in two important ways.

First, *Booth* dealt with victim-impact statements in a capital sentencing proceeding. Courts have repeatedly recognized that "death is different"—due to its severity and finality—and therefore demands more judicial scrutiny to ensure that the ultimate punishment is not arbitrarily imposed. *See Gardner v. Florida*, 430 U.S. 349, 357 (1977); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (recognizing that the "penalty of death is qualitatively different from a sentence of imprisonment, however long"). The Supreme Court in *Booth* explicitly noted "that [the]

8

decision today is guided by the fact death is a punishment different from all other sanctions, and that, therefore, the considerations that inform the sentencing decision may be different from those that might be relevant to other liability or punishment determinations." 482 U.S. at 509 n.12 (internal citations omitted).

Serrano argues that the principles of *Booth* are nonetheless applicable to a *Miller*-type sentencing proceeding because the Supreme Court has analogized juvenile life sentences to the death penalty. But the Supreme Court has not compared all juvenile life sentences to the death penalty—only life sentences without the possibility of parole. *See Miller*, 567 U.S. at 474-75 (noting that death and juvenile "life-without-parole sentences" are similar in their permanency and irrevocability). The life sentence imposed here is neither permanent nor irrevocable because Serrano has the right to judicial review after twenty-five years. § 921.1402(2)(a), Fla. Stat. A juvenile life sentence with judicial review after twenty-five years is simply not analogous to the death penalty, even under the Supreme Court's reasoning. *Cf. Graham*, 560 U.S. at 69 (noting "*life without parole sentences* share some characteristics with death sentences *that are shared by no other sentences*") (emphasis added).

Second, *Booth* is distinguishable because it involved victim-impact testimony made to a jury and not a judge. The Supreme Court's holding in *Booth* was grounded on its concerns that opinions from the victim's family on the appropriate punishment "serve no other purpose than to inflame the jury and divert it from deciding the case based on the relevant evidence concerning the crime and the defendant." *Booth*, 482 U.S. at 508. The Court reasoned that such evidence "creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Id.* at 504. Those same risks are not present when the information is presented to a judge because we assume, absent evidence to the contrary, that judges are dispassionately reviewing the evidence when imposing a sentence. *See State v. Dixon*, 283 So. 2d 1, 8 (Fla. 1973) ("[T]he inflamed emotions of jurors can no longer sentence a man to die; the sentence is viewed in the light of judicial experience."), *superseded by statute on other grounds as noted in State v. Dene,*

533 So. 2d 265, 268 (Fla. 1988); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 996 (9th Cir. 2013) (holding a "principled distinction" may be drawn between *Booth* and a case in which the testimony is presented to a judge).

For these reasons, we are not persuaded that a *Miller*-type juvenile sentencing hearing is the functional equivalent of a capital sentencing proceeding so that the categorical exclusion of victim-impact evidence on sentencing is warranted under the Eighth Amendment. We therefore decline to extend *Booth*'s holding to noncapital sentencing proceedings conducted by a judge and find no error in the admission or consideration of the victim-impact evidence at issue here. *See e.g.*, *Lopez v. State*, 181 A.3d 810, 828 (Md. 2018) (refusing to extend *Booth* to the noncapital context and noting neither the court nor the defendant found any court that had done so); *Commonwealth v. McGonagle*, 88 N.E.3d 1128, 1131 (Mass. 2018) (concluding *Booth* does not apply to noncapital proceedings and noting that "[t]he dangerous uses to which a jury in a capital murder trial may put to a victim's recommendation as to a particular sentence are not present at a noncapital sentencing proceeding before a neutral, impartial judge").

While a judge's discretion in sentencing is certainly not unlimited, the record before us shows that the judge sentenced Serrano in a dispassionate manner, with the appropriate level of humanity and restraint.[4] We affirm on this issue.

---

[4] Our opinion today does not foreclose the possibility of a challenge, constitutional or otherwise, where there is affirmative evidence in the record that a judge based his sentence solely on victim's family members' recommendations, or where there is evidence the court became inflamed and diverted from the relevant evidence about the crime and defendant. *Cf. Payne*, 501 U.S. at 809 (noting the potential for a due process claim when unduly prejudicial evidence is introduced and renders the trial fundamentally unfair); *Barnhill v. State*, 140 So. 3d 1055, 1061 (Fla. 2d DCA 2014) (reversing where the trial court was neither dispassionate nor focused on the facts specific to the defendant's

IV.

Finally, we turn to Serrano's remaining issue in which he argues that the sentencing court committed several additional errors that cumulatively render the sentencing decision unreliable. Serrano asserts that the court improperly considered juvenile charges that were dismissed; improperly considered the sentence previously imposed by a different judge; failed to find Serrano's youth a significant mitigating circumstance; and made erroneous findings on Serrano's mental health diagnosis and the role of peer pressure in the crimes. Because Serrano failed to object to any of these issues below, our review is for fundamental error. We address each argument in turn.

A. Serrano's Prior Criminal History

As part of its determination about whether a life sentence is appropriate, the sentencing court must consider "[t]he nature and extent of the defendant's prior criminal history." § 921.1401(2)(h), Fla. Stat. In assessing Serrano's prior criminal history, the court made the following remarks that Serrano now challenges:

> He doesn't have a significant criminal history, but he has some.
>
> I read—no one mentioned—it's part of the record that the state dropped numerous other cases given the sentence of the Court. Had the Court had a different sentence or had the State understood the importance of other convictions in our statutory now [sic] scheme, different decisions may have been made.
>
> I don't know what to make of that other than that there were pending charges that were dropped because of the sentence in this case.

Serrano alleges these comments suggest that the court improperly considered conduct for which he had not been

---

crime, but appeared to apply a general policy against a legislatively authorized sentencing disposition).

11

convicted, amounting to a denial of due process and fundamental error. For support, he relies on this Court's decision in *Yisrael v. State*, where we held that "[c]onsideration of pending or dismissed charges during sentencing results in a denial of the defendant's due process rights." 65 So. 3d 1177, 1178 (Fla. 1st DCA 2011), *approved sub nom. Norvil v. State*, 191 So. 3d 406 (Fla. 2016). There, the sentencing court asked the defendant about two sexual battery charges—one pending and the other dismissed—because, according to the prosecution, the victim would not testify. *Id.* The court questioned the defendant about whether the other victims were lying, and whether he had in fact "rape[d] these other children." *Id.* Shortly after questioning, the court commented, "there are other victims apparently that don't want to testify. So the Court is going to sentence you to [the maximum possible sentence] of 30 years' Florida State Prison[.]" *Id.* We reversed and remanded for resentencing, concluding that the court's questions and remarks, taken in context, "strongly indicate that the dismissed and pending charges were a factor in the court's determination to impose the maximum allowable sentence." *Id.*; *see also Williams v. State*, 193 So. 3d 1017, 1019 (Fla. 1st DCA 2016) (reversing sentence after concluding that "it is clear from the trial judge's comments at the sentencing hearing that he accepted as true, and based his sentencing decision on, the prosecutor's assertions [of unsubstantiated allegations of misconduct]").

Here, unlike in *Yisrael*, the record does not show that the court improperly considered dismissed charges or unsubstantiated conduct in determining the appropriate sentence. While the court mentioned the dismissed charges and briefly speculated about why the State may have dropped the charges, the court's follow-up statement—"I don't know what to make of that"—suggests equivocation and nothing more. Indeed, the court did not discuss the nature of the charges, the details of the charges, or suggest in any fashion that it was considering them in determining Serrano's sentence.

## B. Intent of the Original Sentencing Judge

When a resentencing occurs, a defendant is entitled to a "de novo sentencing hearing." *Peters v. State*, 128 So. 3d 832, 840

12

(Fla. 4th DCA 2013). A successor judge may not, upon resentencing, base a sentence entirely on the prior judge's determination. *Id.* The successor judge must review the record, familiarize themselves with the case, and make sure that the imposition of sentence is "his or her act of independent judgment," not "reliance on the decision of the original judge." *Id.* But "nothing categorically bars a successor judge from considering the sentence imposed by a prior judge" as long as the new sentence results from "an act of independent judgment." *Id.* at 841.

Serrano argues that the following remarks by the court show that it improperly relied on the original sentencing judge's intent in determining whether life is an appropriate sentence:

> So I've looked at everything and tried to weigh them carefully. I looked at the judge's sentence. The one clue that I did get from the sentence of Judge Morris is that he sentenced this defendant to, in Count II, 15 years consecutive to a life sentence. And that would indicate that that was not necessary. That was not required; that it was his desire that he spend life in prison. That would be the indication of that sentence.

We disagree that these remarks, when viewed in the context of the entire sentencing proceeding, amount to an abdication of the court's duty to make an independent judgment regarding the sentence it imposed. In fact, the record shows that the court was thoroughly familiar with the background and circumstances of the case, heard evidence and argument from both sides, and analyzed the sentencing factors of section 921.1401, providing detailed reasons why it was imposing a life sentence. The court also recognized that the prior judge had no choice but to impose a life sentence and did not have the opportunity to hear any of the evidence that it was provided under the new juvenile sentencing guidelines. The record demonstrates that the court proceeded on a "clean slate" for resentencing and did not merely rubber stamp the prior judge's decision.

## C. Serrano's Youth

Serrano next argues that the court erred in failing to find that Serrano's youth alone is a mitigating circumstance entitled to great weight. When a court decides on an adult sentence for a juvenile offender, "the chronological age of a minor is itself a relevant mitigating factor of great weight." *Miller*, 567 U.S. at 476 (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 116 (1982)). To that end, section 921.1401 mandates that a sentencing court consider "factors relevant to the offense and the defendant's youth and attendant circumstances." Specifically, the court must consider "[t]he defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense[,]" "[t]he effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense," and "[t]he effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment." § 921.1401(2)(c), (e) & (i), Fla. Stat.

As to Serrano's "age, maturity, intellectual capacity and mental and emotional health," the court found:

> He was young. He was a juvenile when this happened, though he was only a few months from being 18. He's a bright young man for his age, certainly did not lack maturity. And there's no indication of any great mental or emotional disease that he suffered. He had some diagnosis, but these are not significant diagnoses that would be atypical of someone of his age and maturity.

The court specifically discussed the effect of immaturity, impetuosity, and the failure to appreciate risk and consequence. It found that Serrano's "lack of maturity is not particularly compelling." The court noted that Serrano planned the crime and took a gun and four other people with him, demonstrating that he wanted the threat of death or bodily harm to execute his plan. The court also found that the facts of the crime did not reflect an impetuous act because Serrano ordered the victim to the ground, and proceeded to shoot the victim in the head, even as his friend urged him not do so. The court determined that Serrano knew the consequences of his actions—that when he pulled the trigger, the

14

victim would die. It reasoned that this was a far cry from a young person who did not appreciate the risks of a situation. As to "[t]he effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment," the court found "beyond those that I've already enumerated, I don't know of any particular characteristic attributable to his youth that bore on his decision."

The record shows that the court considered Serrano's youth and its attendant circumstances when choosing to impose the life sentence. Serrano is merely objecting to how the court weighed the relevant factors. We find no error.

## D. Claims of Erroneous Findings

In his final sub-issue, Serrano challenges two findings as unsupported by the record. First, he argues there is no record support for the court's finding that Serrano's mental health diagnosis (i.e., generalized anxiety disorder) was "not atypical of someone of his age and maturity." Serrano is correct that there was no evidence that his generalized anxiety disorder was typical or atypical. Even so, there is no contention that this error alone undermines the reliability of the court's sentencing determination to warrant a new sentencing hearing. Even if the error had been preserved, the record indicates that the finding that the generalized anxiety was not atypical was harmless.

Second, Serrano alleges the court erred by finding that the murder was not the product of peer pressure because the psychologist's uncontradicted testimony suggested that for teens, the presence of peers increases aggressive, reckless behavior, which creates the same effect as peer pressure. This claim is meritless. As the court noted and the evidence showed, Serrano was the ring leader. He orchestrated the crime. And when he shot the victim, his peers were running away. One of them even tried to convince Serrano not to pull the trigger. The trial court's finding that the murder was not the product of peer pressure is supported by competent, substantial evidence in the record.

AFFIRMED.

ROBERTS and MAKAR, JJ., concur.

15

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Andy Thomas, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, for Appellee.