MORRIS, Judge.
Peter Barnhill appeals his sentences for twenty counts of possessing child pornography after he entered an open guilty plea to the trial court. Barnhill sought a downward departure sentence based on a need for specialized treatment for a mental disorder that is unrelated to substance abuse or addiction, pursuant to section 921.0026(2)(d), Florida Statutes (2010), as well as on his cooperation with law enforcement, pursuant to section 921.0026(2)®. We conclude that the trial court abused its discretion by failing to weigh the totality of the circumstances in this case and by, instead, denying Barn-hill’s request based on the trial court’s perceived general concern about cases involving these types of crimes and the trial court’s application of an incorrect standard during sentencing. We therefore reverse Barnhill’s sentences and remand for resen-tencing.
I. Background
In his motion for a downward departure, Barnhill sought a five-year prison sentence followed by a lengthy term of probation. As the motion related to section 921.0026(2)(d), Barnhill depended heavily on a forensic psychological evaluation conducted by Dr. Peter M. Bursten. Dr. Bursten determined that Barnhill was a low risk sexual offender who was “clearly amenable to engaging [in] therapeutic interventions.” Dr. Bursten also opined that Barnhill was not in denial of his “problem,” understood the wrongfulness of his actions, and was not “an antisocial or criminally predisposed individual.” Accordingly, Dr. Bursten believed there was a “negligible potential” that Barnhill would “engage in future acts of sexually related impropriety.” In making these findings, Dr. Bur-sten relied on a polygraph examination which revealed that Barnhill was truthful when denying any sexual contact with minors.
As Barnhill’s motion related to section 921.0026(2)®, Barnhill pointed out that he truthfully answered law enforcement’s questions, showed investigators his computer, and even pointed out a specific folder on the computer containing child pornography. Barnhill also noted that shortly after his arrest, he voluntarily sought treatment from a psychologist and that Dr. Bursten found that Barnhill was not attempting to minimalize his behavior.
At the sentencing hearing, Dr. Bursten testified consistently with his findings from the forensic psychological evaluation. During questioning, the trial court inquired of Dr. Bursten as to whether Barn-hill had “the desire to touch” and Dr. Bursten admitted he could not answer that question. The trial court subsequently expressed concern that Barnhill had been viewing pornographic images of young children since he himself was young; the court commented that Barnhill categorized the pictures, which was “scary,” and the court asked Dr. Bursten whether that fact made the risk factor go up. In response, Dr. Bursten noted that Barnhill was, at that time, forty-one years of age and that there was no evidence he had engaged in any “hands-on” sexual impropriety nor was there any “indication of going beyond that boundary.” Dr. Bursten also noted that Barnhill had cooperated with law enforcement, was intellectually astute, and had maintained steady employment in a high-tech occupation.
Barnhill then presented testimony from his employer that he had been a dedicated, hardworking employee since 1986 and testimony from a Hillsborough County sheriffs deputy that Barnhill had cooperated during the investigation.
*1058 During closing, Barnhill primarily emphasized Dr. Bursten’s findings in arguing that a downward departure was warranted, though Barnhill also reminded the court that he had community support. The State acknowledged that it was not contesting Dr. Bursten’s testimony but reiterated the issue that the court was concerned with: whether Barnhill had an interest in touching a child. The State then requested that Barnhill be sentenced to thirty years in prison on count I and to fifteen years in prison on counts II through XX to run consecutive to the sentence on count I.
Ultimately, the trial court denied Barn-hill’s request for a downward departure, sentencing him to fifteen years in prison on count I. As to counts II through XX, the trial court sentenced Barnhill to seven years in prison on each count, followed by eight years of sex offender probation, with those sentences running consecutive to the term on count I, but concurrent to each other. Thus, Barnhill received a total lawful prison sentence of twenty-two years.
In imposing the sentence, the trial court stated:
I want to assure Mr. Barnhill, and I want to make it clear on the record there is not one thing that the [S]tate of Florida can say, have they ever said, nor will they ever be able to say in the future that is going to scare me or cause me the concern that would make me give out some lengthy sentence.
I give out sentences that I believe are appropriate, and I’m telling you this, and don’t — please don’t take anything personal. I just want you to know that I struggle on these cases, not just Mr. Barnhill’s, but these types of cases every single day of my life since I’ve been put into this division, and there’s not one day that goes by, not one, that I don’t think about these cases.
Mr. Barnhill is one of many individuals that come in front of me that have absolutely no criminal record whatsoever, none, that live a dark side, if you will, that no one knows about. Family members don’t know about, teachers don’t know about, business associates don’t know about[J [T]he only people that know about it is Mr. Barnhill and other persons that have like interests that he would choose to know about his interests as well.
But the vast majority of the people that come in front of me in this courtroom ... don’t have prior criminal histories ....
This child pornography phenomenon, if you will, is becoming an epidemic. It’s bigger, I think, than what any of us in this room or in law enforcement circles absolutely realize .... It’s an epidemic. I didn’t know until today, and Dr. Bursten has testified in front of me on numerous occasions, so has Dr. Carpenter, as well as other psychologists, that the new study has come out [and] the percentage is 50/50 of child pornographers having hands-on [contact]. That is scary. That is — that is scary. We’re not talking about a fantasy.
And the psychologists in their book ... list it as a fantasy[.][P]edophiles are real. They’re real. They may have some twisted fantasy about observing prepubescent children in bondage situations and being raped and having sexual intercourse and oral intercourse, being sodomized, but even though that might be a fantasy of watching those things on a computer while they stimulate themselves, it’s real when they touch. And when they touch, that child is damaged forever, forever.
And maybe it’s what some people don’t even — don’t even think about. It’s just a picture. It’s not just a picture. *1059 This is a child who has actually been manipulated either by fear or because a person is so much older and can control them and grooms them to go into these sexual scenarios, and even though you get some of these pictures where you get a six year old [sic] or seven year old [sic] and it appears to be, and I’ve seen them, I’ve seen them in this courtroom, where they appear in the video or on the pictures to be enjoying the act, they’ve been groomed.
That first time they are — they were raped and they are being raped each time as it happens. That’s what scares me. That is what scares me in these types of cases.
But I guess first and foremost, I want you to know that there is not one thing that the [S]tate of Florida can, has or ever will be able to say that is going to cause me to sentence someone that I don’t believe the sentence is appropriate, for whatever that is worth.
[[Image here]]
... I honestly believe that this is an epidemic of greater proportions than any of us in this room ... ever realized.
And there is no magic answer as to whether you’re going to reoffend, or you’re not going to reoffend in this particular case, whether you’re going to touch or you’re not going to touch....
And some people say, well, you’ve taken my life away or you’ve taken my husband’s life away or you’ve taken my father’s life away, but in these types of cases, if you touch, you take the life away of a child[.] [A]nd I cannot tell you how many times I have seen in this courtroom where we have attempted to pick a jury[,] the numbers of men and women, adult men and women, some of which are older than I am [who] have stood at the bench in front of me with tears rolling down their faces because they were sexually abused as a child.
The question is whether or not — first of all, the court is going to downward depart. After listening to all of the witnesses and the presentation not only by your attorney and your family and friends ... as well as listening to the presentation ... by the [S]tate of Florida, I’m going to find that there is no legal reason at this point in time to downward depart.
On appeal, Barnhill argues the trial court erred by denying his motion for a downward departure pursuant to sections 921.0026(2)(d) and (2)(i).
II. Scope of review
We first address the State’s argument that we lack authority to review the trial court’s decision to deny a downward departure sentence in this case based on our opinion in Patterson v. State, 796 So.2d 572 (Fla. 2d DCA 2001), review denied, 817 So.2d 849 (Fla.2002). There, we held that section 924.06(1), Florida Statutes (Supp. 1998), did not give us power to review a trial court’s discretionary decision to deny a downward departure sentence. We determined that the appellant’s sentences were not illegal and did not contain any other error we were empowered to correct under section 924.06(1). Id. at 574.
Although the supreme court denied review in Patterson and has never expressly considered this court’s scope of review discussed in Patterson, it is obvious that the subsequent decisions of both the supreme court and this court, relying on Banks v. State, 732 So.2d 1065 (Fla.1999), have effectively overruled or disapproved that discussion in Patterson.
The Criminal Appeal Reform Act of *1060 1996[1] caused many discussions about the extent of appellate jurisdiction and scope of review in criminal cases. Following the Criminal Appeal Reform Act, the State sometimes argued that a defendant could not challenge a sentence except “on the ground that it is illegal” or if the sentence was “imposed outside the range permitted by the guidelines authorized by chapter 921.” Ch. 96-248, § 5, at 955; § 924.06(d), (e), Fla. Stat. As reflected in the 1996 court commentary to the amendments to Florida Rule of Appellate Procedure 9.140, the rules of procedure expanded the scope of review on appeal to include “unlawful” sentences. At the time Patterson was written, there was doubt about whether the rule of procedure could expand upon the statute. However, since that time there have been innumerable reported cases correcting sentencing errors that rendered a sentence unlawful but not completely illegal. The scope-of-review discussion in Patterson simply is not in line with current precedent. Accordingly, we hereby recede from that portion of our decision in Patterson.
III. The trial court erred by failing to consider the totality of the circumstances of Barnhill’s case and by instead imposing a general standard based on the type of case involved.
A trial court’s decision whether to depart from the guidelines is a two-part process. First, the court must determine whether it can depart, i.e., whether there is a valid legal ground and adequate factual support for that ground in the case pending before it (step 1). Legal grounds are set forth in case law and statute, and facts supporting the ground must be proved at trial by “a preponderance of the evidence.” This aspect of the court’s decision to depart is a mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling.
Second, where the step 1 requirements are met, the trial court further must determine whether it should depart, i.e., whether departure is indeed the best sentencing option for the defendant in the pending case. In making this determination (step 2), the court must weigh the totality of the circumstances in the case, including aggravating and mitigating factors. This second aspect of the decision to depart is a judgment call within the sound discretion of the court and will be sustained on review absent an abuse of discretion.
Banks, 732 So.2d at 1067 (footnotes omitted).[2]
Ordinarily, we would review the trial court’s discretionary decision regarding whether to impose a downward departure for abuse of discretion. Id. But because the issue here revolves around the trial court’s applying an incorrect standard in *1061 determining whether to exercise its discretion, we apply a de novo standard of review. See Cromartie v. State, 70 So.3d 559, 563 (Fla.2011) (holding that issue of whether trial court violated due process by applying an “arbitrary policy of rounding up sentences” is a question of law subject to de novo review); Pressley v. State, 73 So.3d 834, 836 (Fla. 1st DCA 2011) (applying de novo review to trial court’s policy of refusing to consider youthful offender sentencing).
We first note that Barnhill primarily framed his argument as one involving the trial court’s rejection of uncontrovert-ed evidence. But while it is true that the State did not put on rebuttal evidence and the trial court did not explicitly address Barnhill’s evidence, the ultimate issue in this case is whether the trial court properly applied the two-part test as set forth in Banks. We conclude that the trial court did not, instead electing to apply a general standard based on the nature of the crimes involved.
We recognize that these types of cases are disturbing by their very nature and that trial judges must deal with them on a regular basis. As a result, we are not unsympathetic to the difficulty that each trial judge must face when presiding over such cases. However, trial judges are required to rise above the disturbing nature of these and other crimes and to provide every defendant a fair opportunity to be heard by an impartial judge who will consider only the evidence presented to the court within that case. See Williams v. State, 143 So.2d 484, 488 (Fla.1962) (noting that litigants have the right to have their cases heard in a “[calm] and dispassionate environment before an impartial judge and have their rights adjudicated in a fair and just manner”).
While the trial judge in this case did attempt to circumscribe himself by asserting that the State’s arguments would not cause him to impose an inappropriate sentence, it is clear from the rest of the trial judge’s comments that evidence from other hearings factored into his decision not to downwardly depart. It is also apparent that in considering Barnhill’s sentence, the trial judge lumped Barnhill with all other similarly charged defendants irrespective of the testimony that Barnhill presented at sentencing.
“The very foundation of our system of justice mandates that judges be completely neutral and impartial.” M.B. v. S.P., 124 So.3d 358, 365 (Fla. 2d DCA 2013). Where a trial judge permits his emotions to guide him away from this principle, we must reverse. See Williams, 143 So.2d at 488. The decision not to downwardly depart and the sentence ultimately imposed in this case may, in fact, be appropriate. But even to the most casual observer, it could not be believed that Barn-hill received a hearing in a dispassionate environment before a fair and impartial judge. Rather, the transcript reflects the trial judge here was deeply concerned not by the facts specific to Barnhill’s case but by the general nature of the crimes involved and the potential for defendants charged with these types of crimes to progress into crimes involving “hands-on” contact with children. Thus the trial judge at least implied that he would not consider a downward departure in child pornography cases as a general policy.
We conclude that the application of such a general policy constitutes a due process violation resulting in fundamental error. See Cromartie, 70 So.3d at 563; Pressley, 73 So.3d at 836. Therefore, while we affirm Barnhill’s convictions, we reverse the sentences imposed and remand for resen-tencing before a different judge. In doing so, we do not suggest that Barnhill is entitled to a downward departure sentence pursuant to either section 921.0026(2)(d) or *1062 (2)(i), but he is entitled to be sentenced at a proceeding wherein the trial judge considers the totality of the circumstances based on the evidence presented in this case.[3]
Affirmed in part, reversed in part, and remanded with instructions.
DAVIS, C.J., and ALTENBERND, NORTHCUTT, CASANUEVA, SILBERMAN, KELLY, VILLANTI, WALLACE, LaROSE, KHOUZAM, CRENSHAW, BLACK, and SLEET, JJ„ concur.

. Ch. 96-248, § 5, at 955, Laws of Fla.

. We note that the State appears to argue that the requirements of step 1, as it relates to grounds for departing downward under section 921.0026(2)(i), cannot be met in this case due to a waiver by Barnhill. The State asserts that Barnhill failed to request a downward departure on that basis below. However, the issue was clearly raised in Barnhill's motion though the wrong subsection was cited. It is trae that Barnhill did not clearly argue this point at the sentencing hearing, but he did briefly elicit testimony regarding his cooperation with law enforcement. Thus we find no merit to the State’s waiver argument. Furthermore, the issue of whether Barnhill presented sufficient evidence to establish a legal ground for departure need not be addressed given our disposition on the due process issue as explained herein.

. Barnhill also raised the issue of whether, under section 921.0026(2)(d), a defendant must still establish that his mental disorder requires treatment that is not available in the Department of Corrections. We acknowledge that this court, as well as the First and Third District Courts of Appeal, has required such proof. See, e.g., State v. Hall, 981 So.2d 511, 514 (Fla. 2d DCA 2008); State v. Scherber, 918 So.2d 423, 424-25 (Fla. 2d DCA 2006); State v. Wheeler, 891 So.2d 614, 616 (Fla. 2d DCA 2005); State v. Ford, 48 So.3d 948, 950 (Fla. 3d DCA 2010); State v. Holmes, 909 So.2d 526, 528 (Fla. 1st DCA 2005). We also acknowledge that both the Fifth and Fourth District Courts of Appeal have receded from their prior case law and certified conflict with the opinions from this court and the First and Third District Courts of Appeal. See, e.g., State v. Owens, 95 So.3d 1018, 1019-21 (Fla. 5th DCA 2012) (en banc); State v. Chubbuck, 83 So.3d 918, 921-23 (Fla. 4th DCA 2012) (en banc), review granted, No. SC12-657 (Fla. Dec. 17, 2012). Oral argument was conducted in the Chubbuck case before the Florida Supreme Court on September 17, 2013. Barnhill asks this court to recede from our prior case law and adopt the position taken in Owens and Chubbuck. However, we need not address that issue as it was not addressed by the trial court and is not dispositive of our decision.