DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THOMAS CONIGLIO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-1484

[November 6, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; William L. Roby, Judge; L.T. Case No. 432021CF000027A.

Carey Haughwout, Public Defender, and Timothy Wang, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his sentence after entering a plea to multiple counts of possession of child pornography. He argues the trial court erred in denying his request for a downward departure and in partially denying his motion to correct his sentence. We agree with him the trial court's handling of the downward departure hearing and reverse and remand the case for resentencing.

- *The Facts*

The State charged the defendant with one hundred second-degree counts and two third-degree counts of possession of child pornography. The defendant requested his case be transferred to the mental health court, which the original trial court denied. The defendant ultimately entered an open plea to the court on one hundred counts of possession of child pornography; the State nolle prossed two counts.

At his sentencing hearing, the defendant made two arguments for

downward departure: (1) his crimes were committed in an unsophisticated manner and constituted an isolated incident for which he has shown remorse, and (2) he required specialized treatment for a mental disorder.

The defendant presented two mental health experts at the sentencing hearing. They both testified the defendant suffered from multiple mental health issues stemming from his childhood. The defendant was discharged from the military due to a mental health episode and deemed 100% disabled. The doctors recommended the defendant undergo a sexual offender program and treatment for substance abuse.

The defendant called his wife and relatives to testify as to his character and the treatment they thought would help. Numerous family members and friends wrote letters on his behalf. This was the defendant's first and only arrest. The defendant completed a program at the Martin County Jail without any disciplinary referrals. He expressed remorse for his actions, saying: "none of this might have happened if I didn't fail myself, falling into the grips of addiction to the point where I physically and mentally could not say no to anything."

The State presented the lead detective in the defendant's case. On cross examination, the detective generally described how the defendant found the child pornography on the internet. He testified the defendant admitted to looking at child pornography since the 1990s.

After defense counsel reiterated its arguments for downward departure, the trial court said:

> Okay I've done two child pornography cases to trial in twenty-three years of being a trial judge. Those images are the most heinous and atrocious pictures I've seen. I've seen murder victims and – and I wouldn't want to see either of them, but if I had to see things, I would rather see the murder victims than the child porn.
>
> I was told by a very senior circuit judge when I took over for him in 2000 that I needed to watch every single image that was shown during trial and not look away like the juries often do, they glance and look away but I had to watch every single image because I could be moved to recuse or I failed to consider the evidence or whatever, so I watched every single image of hundred some images.
> [. . . .]

I went home that night, I didn't sleep. I could not get -- the images were burned into my mind. They were absolutely heinous. The next night, I went home, the second day of the trial, I didn't sleep either. The third night I got home, I slept two hours. Didn't eat anything either. It was beyond my ability to do so.

So, I find these child porn cases and child porn pictures to be a truly heinous crime creating multiple child victims throughout the entire country on multiple occasions.

The Court finds the defendant in here to be a danger to society and particular to children. There is no sufficient basis for the Court to depart, but if there were a basis to depart, the Court, in this particular case, is not inclined in any way, shape, manner or form to depart.

In sentencing the defendant, the trial court said: "the Legislature has through its sentencing guidelines determined the lowest permissible score to be 1,342.5 months Department of Corrections on each count and I am imposing such a sentence on each count, Counts 3 through 102."

After sentencing, the defendant filed a 3.800 motion, arguing: (1) the trial court issued an illegal sentence; (2) the sentence must be corrected to reflect that the time be served concurrently; and (3) the defendant must receive jail credit for all counts. The trial court denied the first claim and granted the other two, correcting the sentence.

The defendant now appeals his sentence and the order denying in part his 3.800 motion.

- ***The Analysis***

The defendant argues the trial court erred in finding there was no basis to downwardly depart and by being predisposed to sentencing defendants charged with possession of child pornography. The State suggests that even if there was a basis to downwardly depart, the court indicated it would not exercise its discretion to do so.

A trial court's decision to grant a downward departure is a two-step process. *State v. Alonso*, 31 So. 3d 265, 266 (Fla. 4th DCA 2010). "First, the court must determine whether it *can* depart, i.e., whether there is a valid legal ground and adequate factual support for that ground in the case pending before it (step 1)." *Banks v. State*, 732 So. 2d 1065, 1067

(Fla. 1999) (emphasis in original). This first step is "a mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling." *Id.*

Second, the trial court "must determine whether it *should* depart, i.e., whether departure is indeed the best sentencing option for the defendant in the pending case." *Id.* at 1068 (emphasis in the original). We will sustain the trial court's decision absent an abuse of discretion. *Id.*

When deciding whether to grant a downward departure, the trial court must consider the totality of the circumstances in each defendant's case. *Barnhill v. State*, 140 So. 3d 1055, 1060 (Fla. 2d DCA 2014). Setting a general standard based on the nature of the crime involved is prohibited and constitutes fundamental error. *Id.* at 1061.

1. **Step One**: Is there a valid legal ground and adequate factual support to depart?

Here, sufficient evidence supported a legal ground for departure as "[t]he defendant require[d] specialized treatment for a mental disorder that [was] unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment." § 921.0026(2)(d), Fla. Stat. (2022).

Two mental health experts testified that the defendant suffered from multiple psychiatric disorders, including PTSD from childhood sexual abuse. He was determined to be 100% disabled by the VA as a result of these disorders, which manifested themselves while he was serving in the military. While he also suffered from alcohol abuse, the experts recommended both psychological treatment to address his childhood trauma, as well as substance abuse treatment. This involved two separate treatments. Thus, his psycho-sexual mental disorder was unrelated to his alcohol abuse.

This case is similar factually to *Daniels v. State*, 884 So. 2d 220 (Fla. 2d DCA 2004), in which the defendant sought downward departure also because of a mental disorder needing treatment. *Id.* at 221. There, the experts testified that the defendant had mental disorders from childhood, including child sexual abuse. *Id.* The defendant needed to "undergo 'extensive substance abuse treatment, counselling and therapy for people who have been reportedly victims of child abuse, extensive dual diagnosis treatment.'" *Id.*

The trial court determined that there was no ground to depart

4

because the only treatment recommended was for substance abuse. The appellate court reversed, noting that, "[t]he record evidence suggests that Daniels has a mental health diagnosis of schizoaffective disorder, bipolar type, that requires treatment **separate from substance abuse treatment**." *Id.* at 222 (emphasis added). As in *Daniels*, the evidence in this case showed that defendant needed treatment for mental health disorders separate from his alcohol abuse. This was sufficient to constitute a ground for departure.

Similarly, in *Hiraldo v. State*, 268 So. 3d 955 (Fla. 2d DCA 2019), the trial court had denied a downward departure, accepting the State's argument that the defendant's bipolar disorder had a substance abuse component and thus did not constitute a ground for departure. *Id.* at 955–56. In rejecting this claim, the court explained:

> We conclude that the trial court misconstrued the evidence when it accepted the State's argument that Hiraldo's bipolar disorder had a substance abuse component. Hiraldo's counselor made it clear that Hiraldo was being treated for two disorders: bipolar disorder and substance abuse disorder. And Hiraldo's treatment for the two disorders was different in that she was taking medication only for the bipolar disorder. The goals of the treatments were also different: Hiraldo's improvements for her bipolar disorder were measured by her ability to regulate her emotions, and her improvements for her substance abuse disorder were measured by her ability to stay clean.

*Id.* at 956.

Thus, where the defendant demonstrates that he or she suffers from multiple mental health disorders, including substance abuse, and the treatment for substance abuse is different than the treatment for the other disorders, then the trial court can legally downward depart if evidence is offered regarding the treatment and the defendant's amenability to treatment, thus satisfying the first step for departure.

In this case, the prosecutor made an argument that misconstrued the statutory ground. He argued that "a large component of defendant's activities has to do with substance abuse." The statute does not require a connection between the crime and the mental disorder. "[T]here is no requirement that a defendant's mental health issue must have a connection to the criminal conduct to be a ground for downward

5

departure." *Geliga v. State*, 283 So. 3d 394, 397 (Fla 4th DCA 2019).  All the statute requires is that the defendant have a mental health disorder requiring specialized treatment unrelated to substance abuse.  Appellant's evidence supported a valid ground for departure.

In short, the trial court erred in determining no legal grounds for departure existed.

      2. **Step Two**:  "[W]hether departure is indeed the best sentencing option for the defendant in the pending case"?

In the second step, the trial court has discretion in determining whether to depart.  However, the trial court must use that discretion in a neutral and impartial manner.  *Barnhill,* 140 So. 3d at 1060.  A court cannot refuse to consider a downward departure in child pornography cases as a general policy.  *Id.*

In *Barnhill*, the trial court refused to grant a downward departure in the defendant's child pornography case, reasoning that child pornography was an "epidemic" and that it struggled with "these" cases.  *Id.* at 1058.  The Second District reversed, ruling the trial court improperly "lumped [the defendant] with all other similarly charged defendants" and improperly considered evidence from other trials.  *Id.* at 1061.

Similarly, the same trial judge denied another request for a downward departure because it was "not willing to take the risk" with a person who viewed child pornography.  *Goldstein v. State*, 154 So. 3d 469, 473 (Fla. 2d DCA 2015).  The Second District once again reversed on the same grounds as *Barnhill. Id.* at 475-76.

Here, the trial court commented:

> Okay I've done two child pornography cases to trial in twenty-three years of being a trial judge.  Those images are the most heinous and atrocious pictures I've seen.
> [. . . .]
>
> I went home that night, I didn't sleep.  I could not get -- the images were burned into my mind.  They were absolutely heinous.  The next night, I went home, the second day of the trial, I didn't sleep either.  The third night I got home, I slept two hours.  Didn't eat anything either.  It was beyond my ability to do so.

> So, I find these child porn cases and child porn pictures to be a truly heinous crime creating multiple child victims throughout the entire country on multiple occasions.

We have reviewed the record and transcript of the sentencing hearing and conclude the trial court also erred by not being "completely neutral and impartial." *Barnhill*, 140 So. 3d at 1061. Rather than focusing on the evidence produced at the sentencing hearing and the facts of this case, the court recited his prior experience in child pornography cases and their effect on him. In fact, the trial court made no reference to the facts or charges in this case. As the Second District noted in *Barnhill,*

> We recognize that these types of cases are disturbing by their very nature and that trial judges must deal with them on a regular basis. As a result, we are not unsympathetic to the difficulty that each trial judge must face when presiding over such cases. However, trial judges are required to rise above the disturbing nature of these and other crimes and to provide every defendant a fair opportunity to be heard by an impartial judge who will consider only the evidence presented to the court within that case.

*Id.* Here, the record reflects the defendant was not given "a fair opportunity to be heard by an impartial judge." *Id.*

We recently encountered the same issue and the same trial court in *Henderson v. State,* 391 So. 3d 934 (Fla. 4th DCA 2024).[1] Like here, Henderson requested a downward departure based upon mental health issues in a child pornography case. Unlike here, however, the evidence did not support Henderson's amenability to treatment. Accordingly, the trial court found no basis for a downward departure because the evidence did not support the defendant's amenability to treatment.

We held that "because the circuit court correctly found, in the first instance, that the defendant did not qualify for a downward departure under either of the two grounds upon which the defendant had relied, we consider[ed] the circuit court's later comments regarding why it would not have exercised its discretion to depart to be gratuitous and harmless." *Henderson*, 391 So. 3d at 936. Even so, we cautioned trial courts about such generalized comments in sentencing.

---

[1] It appears the trial court sentenced the defendant in this case in the morning and Henderson in the afternoon of the same day.

*Henderson* and this case differ in two significant ways. First, the defendant here had much more evidence of his mental health disorders unrelated to substance abuse throughout his life, had undertaken treatment while in custody, and had expressed his amenability to treatment personally and through letters from family and friends. Thus, as we stated above, the trial court erred in analyzing step one by finding no legal basis to depart and by failing to consider the specific facts of the case instead of the trial court's experience with prior child pornography cases.

Second, the trial court's comments about his experience with these types of cases was more extensive in this case and revealed a true bias and/or predisposition toward the crimes charged. It demonstrated the trial court's failure to be impartial and to sentence the defendant based on the totality of facts in this case. As we stated in *Henderson*, we caution trial courts "that generalized comments such as those which the circuit court voiced here . . . undermine the appearance that the defendant is being sentenced by an impartial judge who will consider only the evidence presented to the court within that case." *Henderson*, 391 So. 3d at 938.

As the Second District did in *Barnhill*, we reverse the defendant's sentences and remand the case for resentencing before a different judge. This does not mean the defendant is entitled to a downward departure. He is however entitled to be sentenced by an impartial trial judge who will consider "the totality of the circumstances based on the evidence presented in this case." *Barnhill*, 140 So. 3d at 1062. Understanding that the record contains sufficient evidence to support a downward departure, the new judge must use its unbiased discretion in deciding whether to depart. *Id.* Because the defendant will be resentenced, it renders his third issue moot.

*Reversed and remanded for resentencing before another judge.*

WARNER and CONNER, JJ., concur.

*       *       *

**Not final until disposition of timely filed motion for rehearing.**