FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2024-0171
_____

ERIC J. GAZOOMBI,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Joshua M. Hawkes, Judge.

March 20, 2025

EN BANC

TANENBAUM, J.

For criminal sentencing, the Legislature sets out by statute the parameters a trial court must follow to determine a range (*i.e.*, a minimum and a maximum) of imposable prison time applicable to the conviction or convictions before it. The trial court imposes a sentence by first correctly determining that range; then exercising its discretion to decide what period of incarceration within that range is appropriate for the defendant. Eric Gazoombi seeks our review of the trial court's seven-year, habitual-felony-offender ("HFO") sentence for his felony-battery conviction.[1] He asserts two

_____

[1] Technically, Gazoombi appealed two final orders: his judgment of conviction and the ensuing sentencing order. *See* Fla.

grounds for vacating that sentence, one of which addresses the trial court's refusal to impose a sentence below the statutorily designated lowest permissible sentence—a downward departure—despite Gazoombi's request for it to do so.[2] In at least two cases, this court indicated that dismissal is the proper disposition when such an argument is made. *See Wilson v. State*, 306 So. 3d 1267 (Fla. 1st DCA 2020), *rev. granted*, No. SC20-1870, 2021 WL 1157838 (Fla. Mar. 26, 2021); *Parrish v. State*, 349 So. 3d 485 (Fla. 1st DCA 2022), *rev. granted*, No. SC2022-1457, 2023 WL 5223320 (Fla. Aug. 15, 2023). Yet there have been other times when this court has affirmed rather than dismissed. *See, e.g.*, *Manuel v. State*, 342 So. 3d 289 (Fla. 1st DCA 2022); *Scott v. State*, No. 1D2023-1988, 2025 WL 44367, at *2 (Fla. 1st DCA Jan. 8, 2025).

We dispose of Gazoombi's appeal en banc to eliminate this procedural uncertainty—doing so by distinguishing between our constitutional jurisdiction, on the one hand; and our authority to consider a claim for appellate relief that fails to identify cognizable harm, on the other. As to the former, a criminal defendant like

---

R. App. P. 9.110(h) (allowing for review of "multiple final orders" under a "single notice" that is timely as to each order); Fla. R. App. P. 9.140(b)(3) (providing time for commencing appeal that runs from rendition of "final judgment" to thirty days "following rendition of a written order imposing sentence"). Because he makes no arguments for how his judgment of conviction is the product of some harmful error (*i.e.*, an error implicating one of his rights or privileges), any such argument is forfeited. *See Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) (stating that an argument not made in the initial brief is "procedurally barred"). Gazoombi having failed to demonstrate a basis for reversal of the judgment of conviction in his initial brief, we affirm that final order. *See* Fla. R. App. P. 9.315(a) (providing for summary affirmance of the order on review if the district court "finds that no preliminary basis for reversal has been demonstrated").

[2] Gazoombi's other argument addresses the trial court's determination that he qualifies as an HFO, a determination that increased the maximum authorized sentence from five years to ten. *See* § 775.084(4)(a)3., Fla. Stat. We affirm as to this argument without further discussion.

Gazoombi has the constitutional right to appeal both his judgment and sentence as final orders, so we have jurisdiction to consider such an appeal, provided it is timely filed. As to the latter, a bald assertion that the trial court *should* have imposed a sentence different from the one it did is not a cognizable claim for appellate relief. This court now recedes from the dispositions in *Wilson* and *Parrish*, but only insofar that they were dismissals for this court's purportedly lacking *jurisdiction* to consider a claim regarding a trial court's refusal to depart.[3] Still, because such a claim lacks merit, we do not question the denial of appellate relief in either case. Our having jurisdiction over Gazoombi's timely appeal of the sentencing order—but his failing to demonstrate a basis for relief from that order—we affirm.

I

A

After a jury convicted Gazoombi of felony battery for his involvement in a barroom altercation—but before sentencing—he moved for a downward departure under section 921.0026, Florida Statutes, seeking a sentence more lenient than the lowest one ordinarily allowed. *See* § 921.00265(1), Fla. Stat. (providing for a "lowest permissible sentence" and prohibiting a sentence below (*i.e.*, a "departure sentence") "unless there are mitigating circumstances or factors present as provided in s. 921.0026 which reasonably justify a departure").

Gazoombi presented three statutorily enumerated bases for a sentence below the calculated lowest permissible sentence:[4] 1) the "capacity of the defendant to appreciate the criminal nature of the

---

[3] To be clear, it is the sentencing order—one of the trial court's final orders—ultimately being appealed, not an "order denying a motion for a downward departure." *Wilson*, 306 So. 3d at 1269, 1270, 1273. A timely appeal of the sentencing order allows us to "review any ruling or matter occurring" beforehand, claimed to be both erroneous and an infringement of a substantive right. Fla. R. App. P. 9.110(h).

[4] Gazoombi set out two of these bases in his written motion. He added a third at the sentencing hearing.

3

conduct or to conform that conduct to the requirements of law was substantially impaired"; 2) the "victim was an initiator, willing participant, aggressor, or provoker of the incident the victim was the initiator of the altercation"; and 3) the "defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment." § 921.0026(2)(c)−(d), (f), Fla. Stat. Gazoombi also raised two non-enumerated bases: 1) the need for a proportional sentence; and 2) the fundamental unfairness in the scoresheet's not adequately reflecting Gazoombi's character or danger to the community. *See id.* (1)−(2) (indicating that the statutory list of mitigating factors and circumstances is non-exhaustive).

At the sentencing hearing, the court heard testimony from members of Gazoombi's family and a clinical psychologist who had assessed Gazoombi's mental health. Gazoombi's mother and aunt testified that his childhood was fraught with abuse. To "provide context" for Gazoombi's prior juvenile convictions, his aunt testified she believed the allegations in those underlying cases were "not true." The clinical psychologist, meanwhile, testified that she had determined Gazoombi experienced intellectual challenges, and she could not "rule out" a mood disorder.

Upon considering all this, the trial court denied Gazoombi's request to go below the lowest permissible sentence—correctly calculated to be twenty-four months in prison. The court found the victim was not the initiator of the altercation, having done nothing "to warrant getting punched in the face." It also found from Gazoombi's statements and prior conduct that he clearly knew what he did, at the time, was wrong. Further, the court noted how the Department of Corrections could accommodate Gazoombi's mental health treatment requests. Finally, the trial court rejected the asserted unenumerated grounds for departure. The court having determined Gazoombi qualified as an HFO, the sentencing range was twenty-four months (or two years) at the low end and ten years at the high end. The court sentenced Gazoombi to seven years' imprisonment followed by three years of mental health probation.

4

B

Gazoombi argues the trial court abused its discretion in refusing to depart downward because "the sentence was extremely harsh for a minor incident, with no severe injury, coupled with extensive mitigation and a scoresheet that contained juvenile cases that were too remote to have any bearing on Mr. Gazoombi's current state." We previously have held "that a defendant may not appeal an order denying a motion for downward departure—unless the trial court misapprehends its discretion to depart or refuses to exercise that discretion as a matter of policy." *Wilson*, 306 So. 3d at 1273. There, this court dismissed the appeal, rather than affirm the sentencing order on review, because "the trial court's discretionary decision to deny a downward departure is not a proper basis for appeal." *Id.* at 1268. The court did something similar in *Parrish*, following *Wilson. See Parrish*, 349 So. 3d at 487 (citing *Wilson* for proposition that the court "lacks authority to review a sentencing court's decision not to grant a departure sentence" and "dismiss[ing] this portion of [the] appeal"). As noted above, though, this court has not been consistent in its disposition of these appeals—sometimes dismissing, sometimes affirming.

We now explain how the issue is not one of jurisdictional significance, making dismissal improper. There is no constitutional or statutory right to have a trial court impose a sentence of one length or another within an otherwise properly determined range. That means a defendant's sufficiently demonstrating a *basis* for a downward departure does not entitle him to a departure sentence—a sentence below what had been determined to be the lowest permissible sentence. An argument asserting such an entitlement does not claim cognizably harmful error; therefore, it lacks merit. The proper disposition here—as with any appeal in which there are only meritless claims for appellate relief—is not dismissal, but affirmance.

II

A

Our constitution vests a district court of appeal with the State's sovereign, judicial power—but gives it only appellate jurisdiction through which to exercise that power. *See* Art. V, §§ 1,

5

4(b), Fla. Const. (vesting judicial power in, among other courts, the district court of appeal yet defining the district court's jurisdiction to exercise that power in terms of appeal). This means a district court's judicial power can be brought to bear only upon a trial court's completed exercise of judicial power. *Cf. Schwob Co. of Fla. v. Fla. Indus. Comm'n*, 11 So. 2d 782, 783 (Fla. 1942) ("The appellate jurisdiction of this court cannot be invoked and a cause transferred bodily to it except from a determination of the inferior court. Transfer of a cause to this court without such determination amounts to transferring original jurisdiction to it."); *Ortiz v. United States*, 585 U.S. 427, 455 (2018) (Thomas, J., concurring) (citing *In re Sanborn,* 148 U.S. 222, 224 (1893) and *The Alicia,* 74 U.S. 571, 573 (1869), and observing that the Court "cannot exercise appellate jurisdiction unless it is reviewing an already completed exercise of 'judicial power'"); *id.* at 465 (Alito, J., dissenting) ("Our appellate jurisdiction permits us to review one thing: the lawful exercise of *judicial* power."). Indeed, *only* judicial power can modify or nullify the exercise of judicial power. *See Bush v. Schiavo*, 885 So. 2d 321, 331 (Fla. 2004).

Running in tandem with this grant of appellate jurisdiction is our supreme court's construing the same provision to grant a person the right to appeal a trial court's final order to the district court of appeal. *See* Art. V, § 4(b)(1), Fla. Const. ("District courts of appeal shall have jurisdiction to hear appeals, *that may be taken as a matter of right . . . .*" (emphasis supplied)); *State v. Jefferson*, 758 So. 2d 661, 664 (Fla. 2000) (noting that Article V, section 4(b) of the Florida Constitution both "grants the district courts[] jurisdiction to hear criminal appeals" and "grants criminal defendants a constitutional right to an appeal"). That means a criminal defendant is entitled to seek appellate review of both his judgment of conviction and the ensuing sentencing order.[5] *See* Fla. R. App. P. 9.110(h) (allowing for the appeal of multiple final orders with one timely notice); Fla. R. App. P. 9.140(c) (providing for commencement of an appeal regarding both the final judgment

---

[5] The written order on review is "just a record of the actual sentence required to be pronounced in open court," itself a product of the sentencing hearing conducted by the trial court. *Justice v. State*, 674 So. 2d 123, 125 (Fla. 1996).

and the written sentencing order); *cf.* Fla. R. App. P. 9.140(b)(1)(A), (F) (distinguishing between an appeal of a "final judgment adjudicating guilt" and of "a sentence").

There, in turn, are two components to the district court's jurisdiction: the nature of the order appealed;[6] and the timeliness of invoking that jurisdiction.[7] Once its jurisdiction is invoked properly, the district court—like any county court or circuit court— has the duty to exercise its judicial power to remedy harm stemming from the infringement of a right or privilege, once successfully demonstrated by the pleader (*i.e.*, by the appellant or petitioner). *Cf.* Art. I, § 21, Fla. Const. (guaranteeing the State's courts will "be open to every person for redress of any injury"). In the appellate context, however, the infringement to be addressed is not one caused by another private citizen or by a government officer, but by the *trial court's* order on review. *Cf. State v. Hull*, 20 So. 762, 763–64 (Fla. 1896) (characterizing a proceeding on a writ of error, the precursor to the present-day appeal, as "less an action between the original parties than a question between the judgment and the law").[8]

---

[6] The district court also has direct-review power—when authorized—reaching orders other than those constituting the conclusive exercise of judicial power. *See* Art. V, § 4(b)(1)−(2), Fla. Const. (allowing for review of non-final, trial-court orders, to the extent authorized by supreme court rule; and giving "the power of direct review of administrative action, as prescribed by general law").

[7] The supreme court has the authority to adopt rules setting "the time for seeking appellate review." Art. V, § 2(a), Fla. Const. So failure to take a timely appeal is jurisdictional. *See State ex rel. Diamond Berk Ins. Agency, Inc. v. Carroll*, 102 So. 2d 129, 130 (Fla. 1958) (concluding that a timely filed notice of appeal "is essential to confer jurisdiction on the appellate court").

[8] As Chief Justice Shackleford once observed, the "primary object" of appellate review is to "try the judgment of the court below" rather than to try the original action between the parties.

To be sure, whether there is substantive harm to be remedied *is the threshold question* in any direct appeal. That question, though, goes to whether the appellant, in the initial brief, has demonstrated a *prima facie* basis for relief, not to whether the district court has jurisdiction to assess the threshold question in the first place. That is, once a district court acquires jurisdiction over a final order by the filing of a timely, conforming notice of appeal, we do not dismiss "part" of the appeal just because the appellant fails to identify a valid basis for relief.[9] Simply put, in the exercise of its appellate jurisdiction, if a district court determines there has been no showing of harmful error committed by the trial court, there is no basis for reversal or vacatur—an affirmance then being the only authorized disposition. *See* Fla. R. App. P. 9.315(a) (providing for summary affirmance if the initial brief fails to demonstrate "a preliminary basis for reversal"); *cf.* § 924.33, Fla. Stat. (precluding any presumption of reversible error and providing that "[n]o judgment shall be reversed unless the appellate court is of the opinion . . . that error was committed that injuriously affected the substantial rights of the appellant").

The notice of appeal in this case being timely—and the sentencing order appealed being a final one, rendered by a circuit court within our territorial boundaries—we have jurisdiction to consider Gazoombi's claim for relief directed to the trial court's

---

*Atl. Coast Line R. Co. v. Benedict Pineapple Co.*, 42 So. 529, 532 (Fla. 1906) (Shackleford, C.J., concurring).

[9] By contrast, if an appellant jointly appeals two independent orders—one being appealable and one not—the district court obviously would not have jurisdiction over the latter, and that part of the appeal would be dismissed. This problem might arise when one notice of appeal includes two non-final orders, only one of which is appealable under Florida Rule of Appellate Procedure 9.130. *See* Fla. R. App. P. 9.130(i). Or it might arise when one notice includes two final orders, the notice though being timely as to only one of those orders. *See* Fla. R. App. P. 9.110(h). Here is the overarching point: that a dismissal applies to a written order being appealed when it is not subject to the district court's appellate jurisdiction; *not* to individual arguments being made for reversal or vacatur where jurisdiction otherwise exists.

refusal to sentence him below the floor, which the scoresheet indicated to be twenty-four months. We turn to the merits of that claim, such as it is.

B

There is no doubt Gazoombi had a statutory entitlement to the trial court's consideration of whether it *could* depart downward, based both on what the law allows as mitigating circumstances and on whether there was evidence to support an extant mitigating factor for departure. *See* §§ 921.002(3), 921.0024(2)–(3), 921.0026(1)–(2), 921.00265(1)–(2), Fla. Stat. Had the trial court refused even to consider a departure because of an erroneous conclusion about its authority to do so, the refusal would have been an infringement of a statutory right, one we then would have the authority to remedy. As the supreme court explained, the trial court first "must determine whether it *can* depart, i.e., whether there is a valid legal ground and adequate factual support for that ground in the case pending before it"—the legal ground needing to be established by either statute or court decision; the facts needing to be proved by an evidentiary preponderance. *Banks v. State*, 732 So. 2d 1065, 1067 (Fla. 1999). "This aspect of the court's decision to depart is a mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling." *Id.*

But this is so for the same reason a defendant is entitled to have the trial court correctly calculate his sentencing scoresheet: because a defendant has a right to the trial court's correct determination of the legally permissible sentencing range. Ordinarily, the sentencing range will be the "lowest permissible sentence" (or the floor), at one end of the range; to the statutory maximum (or the ceiling), at the other end. *See* § 921.002(1)(g), Fla. Stat. ("The trial court judge may impose a sentence up to and including the statutory maximum for any offense . . . ."); § 921.0024(2), Fla. Stat. ("The lowest permissible sentence is the minimum sentence that may be imposed by the trial court, absent a valid reason for departure."); § 921.0024(3), Fla. Stat. ("A single digitized scoresheet shall be prepared for each defendant to determine the permissible range for the sentence that the court may impose."); § 921.0026(1), Fla. Stat. ("A downward departure

9

from the lowest permissible sentence, as calculated according to the total sentence points pursuant to s. 921.0024, is prohibited unless there are circumstances or factors that reasonably justify the downward departure."); § 921.00265(1), Fla. Stat. ("A departure sentence is prohibited unless there are mitigating circumstances or factors present as provided in s. 921.0026 which reasonably justify a departure."); *cf.* § 921.002(1)(f), Fla. Stat. ("Departures below the lowest permissible sentence established by the code must be articulated in writing by the trial court judge and made only when circumstances or factors reasonably justify the mitigation of the sentence.").

When a defendant—like Gazoombi here—asks the trial court to impose a sentence below the lowest *permissible* sentence, he effectively requests that the sentencing range be expanded beyond what the scoresheet establishes as the floor. As part of that request, if the defendant identifies a legally cognizable, mitigating factor or set of circumstances and sufficiently establishes a factual basis for that mitigation, the floor drops to zero, and the authorized sentencing range becomes zero to the statutory maximum. The trial court in this case determined that there was no legal or factual basis to depart below the lowest permissible sentence— meaning the court determined that the range of authorized imprisonment was bracketed by twenty-four months at the low end and ten years at the high end. According to *Banks*, that decision is a mixed question of law and fact. 732 So. 2d at 1067. But Gazoombi does not argue that the trial court either misunderstood the law regarding permissible bases for departing, or that the court's determination was not supported by record evidence.

Instead, Gazoombi states only the "second" part of *Banks* "is at issue here," asserting that the trial court abused its broad discretion when it *declined* to depart. *See id.* at 1068 ("This second aspect of the decision to depart is a judgment call within the sound discretion of the court and will be sustained on review absent an abuse of discretion."). He intimates that the trial court acted arbitrarily when deciding not to impose a below-the-floor sentence. There are two problems with Gazoombi's position. First, the trial court determined there was no legal or factual basis for a departure—the first *Banks* prong—and Gazoombi does not challenge that determination. Absent a basis for a departure, the

trial court had no authority to sentence below twenty-four months, and Gazoombi cannot be heard to argue abuse of discretion based on a refusal to impose a sentence outside the authorized range.

Second, even if there were mitigating circumstances to support a departure sentence, there is no meritorious appellate claim to a particular sentence within a statutorily authorized range because a defendant does not have a right to have the trial court impose one sentence instead of another. That is, a trial court's choice of sentence within an authorized range is not cognizable as a claimed harm that can be remedied on appeal. *See Stanford v. State*, 110 So. 2d 1, 2 n.4 (Fla. 1959) ("[W]e have adhered to the principle that if a trial judge imposes a sentence that is within the limits defined by statute, the only relief is before the parole authorities."); *Banks v. State*, 342 So. 2d 469, 470 (Fla. 1976) (noting that the court "has long been committed to the proposition that" it will not "interfere" with a sentence falling within legislatively prescribed limits); *Booker v. State*, 514 So. 2d 1079, 1081 (Fla. 1987) (noting that, historically, "a reviewing court is powerless to interfere with the length of a sentence imposed by the trial court so long as the sentence is within the limits allowed by the relevant statute"); *see also Brown v. State*, 13 So. 2d 458, 461 (Fla. 1943) ("If the statute is not in violation of the Constitution, then any punishment assessed by a court or jury within the limits fixed thereby cannot be adjudged excessive, for the reason that the power to declare what punishment may be assessed against those convicted of crime is not a judicial power, but a legislative power, controlled only by the provisions of the Constitution." (internal quotations and citation omitted)).

Gazoombi does not advance a claim that the trial court deprived him of something more fundamental—the *constitutional* right to a fair proceeding (read: due process) before his being deprived of his liberty. A right-infringement like this, if demonstrated, *would be* a cognizable harm calling for appellate redress. *Cf. Nawaz v. State*, 28 So. 3d 122, 125 (Fla. 1st DCA 2010) (vacating sentence and remanding based on successful assertion "that the trial court considered a constitutionally impermissible factor, namely appellant's national origin, during the sentencing process"). It is a legally cognizable claim in its own right—directed to the sentencing proceeding rather than to the imposition of a

particular sentence within an authorized range. The sentencing hearing obviously was a critical stage in Gazoombi's criminal proceeding—the outcome of that hearing necessarily impacting his liberty interests—so, while he has no right to a particular sentence, he *is* entitled, constitutionally, to the "full panoply" or "array of due process rights" as part of that hearing to determine his sentence. *State v. Scott*, 439 So. 2d 219, 220 (Fla. 1983); *Trotter v. State*, 825 So. 2d 362, 367–68 (Fla. 2002); *see generally Jackson v. State*, 767 So. 2d 1156, 1159–60 (Fla. 2000) (discussing how "all proceedings affecting life, liberty, or property must be conducted according to due process"—proceedings that include sentencings— meaning there is a constitutional mandate that a sentencing hearing comport with the principle of "fairness" (internal quotation and citation omitted)).

As the concurring opinion ably observes, our analysis does not—indeed, could not—foreclose a claim for relief rooted in the constitutional right to a fair proceeding. Gazoombi, however, does not make such a constitutional claim, thereby forfeiting it on appeal. Our conclusion here is limited to the claim Gazoombi does assert: that the trial court *should* have departed. This claim being akin to one for a particular sentence—or at least to a sentence different than the one the trial court chose—it fails to state any cognizable harm that warrants appellate relief.

\* \* \*

We owe Gazoombi a *review*—not a dismissal—of his claim that the trial court should have sentenced him below the twenty-four-month floor. This is not to say he is entitled to any relief. He is not. His claim that the trial court abused its discretion is perfunctory at best, and a review of the record reveals no arbitrariness in how the trial court considered and refused the requested departure. Indeed, in *Wilson*, this court effectively rejected similar arguments as meritless, and we do not question the analysis in that respect. The problem in *Wilson* is only in its "dismissal" of that "part" of the appeal—*Wilson* then being cited by this court in *Parrish* (and in other cases) as authority to do the same. As we now have explained, when faced with a timely appeal of an order over which we have jurisdiction, if we are left wanting for an argument

12

demonstrating a legally cognizable, harmful error that supports an appellate remedy, we should simply affirm.

And that is what we do here.

AFFIRMED.

OSTERHAUS, C.J., and LEWIS, ROBERTS, ROWE, RAY, BILBREY, WINOKUR, M.K. THOMAS, and LONG, JJ., concur.

KELSEY, J., concurs in result only.

WINOKUR, J., concurs with an opinion.

NORDBY, J., did not participate.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WINOKUR, J., concurring.

I agree with the majority opinion unconditionally. I write only to emphasize what I believe is the critical conclusion here.

First, a court determining that a defendant has shown that a departure from the lowest permissible sentence is warranted is not obligated to impose a departure sentence. The sentencing court maintains discretion to determine whether it should impose a departure sentence even when it has found that a valid ground for departure exists. *Cf. Banks v. State*, 732 So. 2d 1065 (Fla. 1999). Accordingly, even if an appellate court believed that a departure had been warranted, the appellant still would not be entitled to resentencing in order to receive a departure sentence.

Second, a sentence within statutory limits is generally not subject to appellate review. *See, e.g.*, *Booker v. State*, 514 So. 2d 1079, 1081 (Fla. 1987) ("[A] reviewing court is powerless to interfere with the length of a sentence imposed by the trial court so long as the sentence is within the limits allowed by the relevant statute.").

These two rules together create the following conclusion: a claim that a court should have imposed a departure sentence and erred by failing to do so is equivalent to a claim that the court should have imposed one statutorily permissible sentence over another. Because "a reviewing court is powerless to interfere" with such a sentence, the claim made in this appeal is non-cognizable.

This conclusion does not conflict with the statement in *Banks* that the decision to depart "will be sustained on review absent an abuse of discretion." 732 So. 2d at 1068. The Second District has read this statement to permit an appellate court to reverse a non-departure sentence on the ground that the sentencing court failed to apply *Banks* properly. *See, e.g.*, *Manyak v. State*, 50 Fla. L. Weekly D276e (Fla. 2d DCA Jan. 31, 2025); *White v. State*, 350 So. 3d 401 (Fla. 2d DCA 2022); *Williams v. State*, 286 So. 3d 892 (Fla. 2d DCA 2019); *Camacho v. State*, 164 So. 3d 45, 48 (Fla. 2d DCA 2015).

*Banks*, however, does not support this suggestion. *Banks* involved a *state appeal* of a decision to depart, not an appeal of a refusal to depart. These two actions have distinctly different legal consequences. The Criminal Punishment Code creates a lowest *permissible* sentence, and specifies that a "downward departure from the lowest permissible sentence" without proper statutory support is "prohibited" and "subject to appellate review." § 921.0026(1), Fla. Stat. An improper departure, one not justified by a statutorily defined departure ground, is an error subject to correction. In contrast, a sentence within the permissible range is not an error subject to correction. No statutory counterpart to section 921.0026(1) permits a defendant to challenge a decision to sentence within the permissible range rather than to depart. So when the court in *Banks* stated that a "decision *to depart* is a judgment call within the sound discretion of the court," it meant

14

what it said: a departure sentence is reviewable for abuse of discretion. *Id.* (emphasis supplied). This does not mean, however, that a decision *not* to depart is reviewable the same way. Nor can it be, as noted above.

All that said, the conclusion that Gazoombi's claim is not cognizable does not foreclose relief if an appellant shows that the decision not to depart—like any other sentencing decision—denied the appellant the right to a fair sentencing proceeding or violated the appellant's due-process rights in any other way.[1] Such impropriety is an error regardless of the sentence imposed. For example, if a sentencing judge relies on impermissible factors in imposing sentence, the judge has erred, regardless of whether the sentence is a departure sentence, a lowest permissible sentence, a maximum sentence, or a sentence anywhere in between.[2]

In short, an argument that the sentencing court *should* have departed and failed to do so is not cognizable on appeal. No other argument about the propriety of the sentencing, even when presented in the context of a decision not to depart, is foreclosed by this opinion.

With these observations I concur with the majority opinion.

---

[1] For instance, a court mistakenly concluding that it was not permitted to depart has erred. *See, e.g.*, *McCorvey v. State*, 872 So. 2d 395, 396 (Fla. 1st DCA 2004).

[2] This observation explains *Barnhill v. State*, 140 So. 3d 1055 (Fla. 2d DCA 2014), one of the cases this court identified as conflict in *Wilson v. State*, 306 So. 3d 1267, 1273 (Fla. 1st DCA 2020). In *Barnhill* the court held that the sentencing judge had an improper general policy not to impose a departure sentence for a certain category of crimes. *See Barnhill*, 140 So. 3d at 1061. While the court reached that conclusion in the context of the sentencing court's refusal to depart, *Barnhill* simply notes that a sentencing factor was improper; it did not conclude that the court should have departed but didn't.

_____

Jessica J. Yeary, Public Defender; Megan Long and Justin Karpf, Assistant Public Defenders, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, for Appellee.